**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

EIG14T SP MA E SANDWICH LLC,
EIG14T SP MA MARSHFIELD LLC, and
EIG14T SP MA S DENNIS LLC,

          Plaintiffs/Defendants in
          counterclaim,

v.

PROPRIETORS DRIVE, LLC, 327
QUAKER MEETINGHOUSE ROAD, LLC,
and 434 ROUTE 134, LLC,

          Defendants/Plaintiffs in
          counterclaim,

and

STARBOARD ACADEMY MARSHFIELD
STELLAR, LLC, LITTLE STARS
LEARNING CENTER SANDWICH
STELLAR, LLC, and SOUTH DENNIS
STELLAR, LLC,

          Lis Pendens
          Defendants,

and

814 ACQUISITIONS LLC,

          Defendant in
          counterclaim.

Docket # 1:26-cv-11187-MPK

**DEFENDANTS/COUNTERCLAIM PLAINTIFFS' OPPOSITION TO
PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS ON THEIR
AFFIRMATIVE CLAIMS FOR RELIEF
-and-
COUNTERCLAIM DEFENDANTS'
MOTION TO DISMISS THE COUNTERCLAIMS**

This Court should deny Plaintiffs/Counterclaim Defendants' ("Plaintiffs") Rule 12(c) motion for judgment on the pleadings for two independent reasons. First, the motion ignores Defendants/Counterclaim Plaintiffs Proprietors Drive, LLC, 327 Quaker Meetinghouse Road, LLC, and 434 Route 134, LLC's ("Sellers") denial of a fact essential to Plaintiffs' claims: namely, that Plaintiffs are the assignee of Counterclaim Defendant 814 Acquisitions LLC ("814"), the original purchaser under the Purchase and Sale Agreement ("P&S") that Plaintiffs seek to enforce. Second, the motion ignores Sellers' affirmative defenses, which independently preclude judgment on the pleadings.

This Court should also deny Plaintiffs' and 814's Rule 12(b)(6) motion to dismiss the counterclaims because the Counterclaim plausibly alleges that 814 fraudulently induced Sellers to execute the Third Amendment to the P&S.

According to the Counterclaim (¶ 29), during a December 4, 2025 meeting, 814 falsely represented that the "sole purpose" of the Third Amendment was to extend the closing deadline. Although the amendment extended the deadline, it also eliminated a core contractual requirement: that the real estate closing occur simultaneously with the related childcare business transaction. See Exhibit 1 to Complaint, Doc. 1-1 (P&S); Exhibit 2 to Complaint, Doc. 1-2 (Third Amendment).

Until then, the parties had consistently understood that the real estate closing would align with the closing of the business transaction, a contractual requirement repeatedly preserved and reaffirmed in prior dealings and amendments, including 814's October 2025 email stating that "the closing on the real estate needs to align with the closing of the business transaction." Counterclaim, ¶¶ 17-18 & Exhibit 2, Doc. 18-2.

Only hours after representing that the amendment merely extended the closing deadline, 814 transmitted an amendment that eliminated that requirement altogether. Counterclaim, ¶33, 35-36 & Doc 1-2 (Third Amendment). Unaware that the amendment materially altered the transaction, Sellers signed it without reading it. *Id.* ¶ 34.

This case is therefore not about a party attempting to avoid a contract simply because it failed to read it. It is about whether a party may obtain a signature on a contract amendment by misrepresenting that the amendment merely extends a deadline while concealing that it simultaneously removes a contractual requirement that the parties had long treated as essential. Massachusetts law has long recognized that contracts procured through fraud, deceptive omissions, or misleading half-truths are voidable, and that questions of reasonable reliance ordinarily present factual issues unsuitable for resolution on a motion to dismiss.

### Statement Of Relevant Facts

This dispute arises from a transaction involving the sale of childcare businesses and the associated real estate to separate purchasers. (P&S, Recitals, Doc. 1-1). Under the parties' agreements, 814 was to purchase the real estate from Sellers at the same time that ECY Partners LLC ("ECY") purchased the childcare businesses. *Id.*

During negotiations, Sellers made clear to 814 that simultaneous closings were "essential" because of licensing, legal, and operational considerations associated with the childcare businesses. Counterclaim ¶¶ 7-9.

The parties memorialized that requirement in the P&S, executed in June 2025, which expressly provided that the real estate transaction would occur "concurrently with and contingent upon the closing of the ECY business transaction" and required that both

2

closings occur "on the same date." Counterclaim ¶¶ 10-12 & P&S (Doc. 1-1), p. 1, Recital B & p. 2, § 1(a).

The parties later executed two amendments to the P&S that preserved the simultaneous-closing requirement. Counterclaim ¶¶ 14, 16, 20-22 & Exhibits 1 and 3 (Docs. 18-1 and 18-3). In October 2025, 814 again confirmed the parties' understanding in writing, stating that "the closing on the real estate needs to align with the closing of the business transaction." *Id.* ¶¶ 17-18 & Exhibit 2 (Doc. 18-2).

On December 4, 2025 at noon, representatives of 814 participated in a Teams video meeting with Sellers' representatives. Counterclaim ¶ 24. During that meeting, 814 represented that the "sole purpose" of their proposed Third Amendment was to extend the closing deadline. *Id.* ¶¶ 24-30.

Although the Third Amendment extended the deadline, it also deleted the contractual provisions requiring simultaneous closings. Counterclaim ¶ 35 & Third Amendment (Doc. 1-2).

Only hours after representing that the amendment merely extended the closing deadline, 814 emailed the Third Amendment to Sellers for electronic signature. Counterclaim ¶ 33. Unaware that the amendment eliminated the simultaneous-closing requirement, Sellers signed the amendment without reading it. *Id.* ¶¶ 34-35.

The amendment did not expressly disclose that it eliminated the simultaneous-closing requirement. Determining that effect would have required comparing the amendment (Doc. 1-1) against multiple provisions of the underlying 18-page P&S. (Doc. 1-1).

Sellers allege that they relied on 814's representations regarding the purpose and effect of the amendment. Counterclaim ¶¶ 31, 34, 59. Given the parties' course of dealing

3

and repeated reaffirmation of simultaneous closings, Sellers had no reason to suspect that 814 had altered that requirement while representing that the amendment merely extended the deadline. *Id.* ¶¶ 31-32.

Sellers further allege that 814 knowingly misrepresented the purpose and effect of the Third Amendment in order to obtain Sellers' execution of a materially different agreement. Counterclaim ¶¶ 29-30, 58. Based on those allegations, Sellers assert affirmative defenses and counterclaims for fraud, breach of contract, , violation of G.L. c. 93A, and declaratory relief. Given these factual allegations, denials, and affirmative defenses, Plaintiffs' and 814's motions should be denied.

<div align="center">

**Discussion**

</div>

## I. PLAINTIFFS ARE NOT ENTITLED TO JUDGMENT ON THE PLEADINGS.

Judgment on the pleadings is appropriate only where the uncontested facts appearing in the pleadings "conclusively establish" the movant's entitlement to judgment as a matter of law. *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006). Rule 12(c) "does not allow for any resolution of contested facts." *Patrick v. Rivera-Lopez*, 708 F.3d 15, 18 (1st Cir. 2013). Rather, judgment may enter only if the uncontested and properly considered facts conclusively establish the movant's entitlement to relief. *Id.*

A plaintiff therefore is not entitled to judgment on the pleadings where, as here, the answer denies material allegations <u>or</u> asserts affirmative defenses that, if proven, would defeat recovery. *See* Arthur R. Miller & A. Benjamin Spencer, 5C Fed. Prac. & Proc. Civ. (Wright & Miller) § 1368, "Judgment on the Pleadings—Practice Under Rule 12(c)" (3d ed. & Apr. 2026 update) ("[T]he plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery.");

4

*Rabinowitz v. Schenkman*, 103 Mass. App. Ct. 535, 540, 223 N.E.3d 1210, 1215 (2023), quoting *Tanner v. Board of Appeals of Belmont*, 27 Mass. App. Ct. 1181, 1182, 541 N.E.2d 576, 577 (1989) ("If the defendant pleads by denial <u>or</u> by affirmative defense so as to put in question a material allegation of the complaint, judgment on the pleadings is not appropriate.") (emphasis in original).

### A. Sellers' affirmative defenses preclude judgment on the pleadings.

Sellers assert affirmative defenses, including fraudulent inducement. Answer, p. 9. Those defenses directly challenge the enforceability of the Third Amendment and preclude judgment on the pleadings. *See Rabinowitz*, 103 Mass. App. Ct. at 540-41 (affirmative defenses challenging enforceability of agreement precluded judgment on the pleadings for plaintiff on contract claim).

### B. Sellers' Answer does not admit all material facts necessary to establish Plaintiffs' entitlement to enforce the P&S.

The P&S was executed by Sellers and 814—not Plaintiffs. Plaintiffs therefore may enforce the agreement only if they establish that 814 validly assigned its contractual rights to them.

The Complaint alleges that 814 "assigned its rights, title, interest, and obligations" under the P&S to Plaintiffs. Complaint ¶ 33. Sellers did not admit that allegation. Instead, Sellers responded that they lack sufficient knowledge or information to form a belief as to the truth of the allegation. Answer ¶ 33. That response operates as a denial. Fed. R. Civ. P. 8(b)(5).

Accordingly, the pleadings do not conclusively establish that Plaintiffs possess the contractual rights they seek to enforce. That disputed factual issue independently requires denial of Plaintiffs' Rule 12(c) motion. *See Tanner*, 27 Mass. App. Ct. at 1183

5

(reversing grant of plaintiff's motion for judgment on the pleadings where answer did not admit all material facts necessary to establish entitlement to relief).

## II. THIS COURT SHOULD DENY THE MOTION TO DISMISS THE FRAUD/MISREPRESENTATION COUNTERCLAIM (COUNT III).

### A. 814's representation that the "sole purpose" of the third amendment was to extend the closing deadline constitutes an actionable misrepresentation of material fact.

To survive a motion to dismiss, Sellers need only plausibly allege facts that, if proven, would establish fraud. The Counterclaim easily satisfies that standard.

According to the Counterclaim, during a December 4, 2025 Teams video meeting, 814 represented that the "sole purpose" of the proposed Third Amendment was to extend the closing deadline. Counterclaim ¶¶ 24-30. That representation was false because the amendment did more than extend the deadline: it also eliminated a core contractual requirement that the parties had consistently preserved and treated as essential—that the real estate closing occur simultaneously with the closing of the ECY business transaction. Counterclaim ¶¶ 7-23, 29-30 & Docs 1-1 & 1-2.

The Counterclaim plausibly alleges that 814 understood the importance of that requirement. During negotiations, Sellers informed 814 that simultaneous closings were "essential" because of licensing, legal, and operational concerns associated with the childcare businesses. Counterclaim ¶¶ 7-9. The requirement was incorporated into the original P&S, preserved in subsequent amendments, and reaffirmed by 814 itself in October 2025, when 814 acknowledged in writing that "the closing on the real estate needs to align with the closing of the business transaction." *Id.* ¶¶ 8-23 & Exhibit 2.

Those allegations plausibly support the inference that 814 knowingly mischaracterized the nature and effect of the Third Amendment in order to obtain

6

Sellers' signature. By representing that the amendment's "sole purpose" was extending the closing deadline, 814 necessarily implied that the amendment did not also eliminate a separate contractual requirement the parties had repeatedly treated as essential. See *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 400 F.3d 62, 69 (1st Cir. 2005), citing *V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411, 414-15 (1st Cir. 1985) (applying Mass. law) ("If knowingly false, implicit representations may be treated as actionable misrepresentations.").

814 attempts to recast the Counterclaim as alleging only predictive statements about what the amendment "would" contain "hours before" it was transmitted for signature. See Memorandum of Law in Support of Plaintiffs' and Counterclaim Defendants' Motion for Judgment on the Pleadings and To Dismiss ("Memo of Law") pp. 6-7. But Massachusetts law recognizes that a misrepresentation concerning a speaker's present intention as to future conduct may constitute actionable fraud. *Kenda Corp., Inc. v. Pot O' Gold Money Leagues, Inc.*, 329 F.3d 216, 226 (1st Cir. 2003), quoting *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 709, 563 N.E.2d 188, 192 (1990).

Here, Sellers plausibly allege that, when 814 represented that the amendment's "sole purpose" was to extend the closing deadline, 814 already intended that the amendment would also eliminate the simultaneous-closing requirement. The Counterclaim plausibly alleges an actionable misrepresentation concerning the nature and effect of the very amendment that 814 intended to present for execution later that same day.

814 cannot avoid the Counterclaim by arguing that its later email transmitting the amendment did not itself contain a false statement. Memo of Law. p. 7.

7

Massachusetts law does not require that the misrepresentation occur "at the precise time the contract was signed." *McEvoy*, 408 Mass. at 712. Liability may exist where the misrepresentation is "still operative" at the time of execution. *Id.*, quoting *Broomfield v. Kosow*, 349 Mass. 749, 758–759, 212 N.E.2d 556 (1965).

Because the alleged misrepresentation preceded execution by only hours, Counterclaim ¶¶ 24-35, Sellers plausibly allege that it remained operative when they signed the Third Amendment.

## B. Massachusetts law does not enforce agreements procured through fraud.

Plaintiffs and 814 reduce this case to the proposition that that a party is always bound by a document it signs, even where the counterparty affirmatively misrepresented the nature and purpose of the document immediately before transmitting it for execution. That is not Massachusetts law.

Based on public policy, "the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it." *McEvoy*, 408 Mass. at 713, quoting *Bates v. Southgate*, 308 Mass. 170, 182, 31 N.E.2d 551 (1941). Massachusetts law instead recognizes that "parties to contracts, whether experienced in business or not, should deal with each other honestly," and that "a party should not be permitted to engage in fraud to induce the contract." *McEvoy*, 408 Mass. at 712-713;

Although parties ordinarily are bound by agreements they sign whether they read them or not, Massachusetts recognizes a longstanding exception where a signature is procured through fraudulent inducement. *St. Fleur v. WPI Cable Systems/Mutron*, 450 Mass. 345, 355-56 (2008), citing *Freedley v. French*, 154 Mass. 339, 342, 28 N.E. 272

8

(1891). Indeed, Plaintiffs and 814 acknowledge that a party who signs a contact without reading it is not bound if the party was "induced to sign it by fraud..." Memo of Law, pp. 5-6, quoting *Markell v. Sideny B. Pfeifer Found.*, 9 Mass. App. Ct. 412, 440, 402 N.E.2d 76, 93 (1980). As the SJC explained: "One party cannot enforce a contract against another whose signature he has procured by fraud or fraudulent representations, which induced the signer reasonably to believe and understand that the instrument was substantially different from what it really was." *St. Fleur,* 450 Mass. at 350 n. 4, quoting *Boston Five Cents Sav. Bank v. Brooks*, 309 Mass. 52, 55, 34 N.E.2d 435 (1941) (fraud rendered agreement unenforceable even where signer failed to read document before signing).

Questions of fraudulent inducement and reasonable reliance ordinarily present factual issues regarding contract enforceability that are unsuitable for resolution on a motion to dismiss. In *St. Fleur,* for example, the SJC held that evidence that an employee's supervisor knowingly misrepresented the nature and contents of an arbitration agreement she signed without reading it, coupled with the employee's reasonable reliance on that misrepresentation, created a triable dispute concerning the enforceability of the agreement. 450 Mass. at 350, 355. Similarly, in *Schell v. Ford Motor Co.*, 270 F.2d 384 (1st Cir. 1959) (applying Mass. law), the First Circuit held that a partially truthful description of a document could establish fraudulent inducement even though the plaintiff failed to read the document before signing it.

Sellers plausibly allege that 814 represented that the "sole purpose" of the Third Amendment was to extend the closing deadline while failing to disclose that the amendment also eliminated the parties' longstanding simultaneous-closing

9

requirement. Accepting those allegations as true—as the Court must at this stage—the Counterclaim plausibly alleges fraudulent inducement sufficient to defeat dismissal.

### C. Plaintiffs' And 814's Authorities Do Not Support Dismissal.

Plaintiffs and 814 principally rely on cases recognizing two unremarkable propositions: contracting parties ordinarily are bound by agreements they sign, and reliance may be unreasonable where the truth is obvious from the face of the document. Those authorities do not warrant dismissal here.

As an initial matter, several of Plaintiffs' principal cases arise in materially different contexts that do not involve allegations of fraudulent inducement under Massachusetts common law. For example, the three cases Plaintiffs and 814 cite for the proposition that Sellers have not alleged a false representation concern bills of lading governed by the federal Carmack Amendment—not fraud in the inducement under Massachusetts law. See Memo of Law, pp. 6-7, citing *Dinsfriend v. Fine Arts Express, Inc.*, 1996 Mass. App. Div. 227, 1996 WL 748189 (Dec. 31, 1996); *Chafetz v. U.P.S., Inc.*, 1992 Mass. App. Div. 67, 1992 WL 12949800 (1992); *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407 (7th Cir. 1987).

More importantly, those cases actually recognize the fraud exception on which Sellers rely. *Dinsfriend* expressly acknowledged that the ordinary rule enforcing signed agreements applies only "in the absence of fraud." 1996 WL 748189 at *4. Likewise, *Hughes* recognized that fraudulent inducement may defeat contract enforcement even though a mere failure to read a contract ordinarily will not. 829 F.2d at 1417.

10

Plaintiffs' reasonable-reliance cases are similarly distinguishable. Most were decided after factual development at summary judgment or trial—not on a motion to dismiss.[1] The facts of those cases also differ materially from those alleged here. In *Kuwaiti Danish*, for example, the SJC found a buyer's reliance on a salesman's congratulatory statements about having reached a deal was unreasonable because the salesman's written quotation expressly stated on its face that it was merely an "invitation to offer" and that any contract required approval from someone with authority for the seller. 438 Mass. at 467-69. As the Court explained, "[n]o 'investigation' was required" because the contradiction between the alleged oral representation and the written document was "obvious." *Id.* at 468 (collecting cases).

Likewise, in *Graham v. Just A Start Corp.*, the plaintiff claimed she had been told that a document concerned only Registry of Deeds fees, even though the document prominently bore the title "General Release" and contained release language in its opening paragraph. 2011 WL 3524405 at *4-5. The court concluded that reliance was unreasonable because a cursory review would have revealed the document's true nature.

---

[1] See Memo of Law. p. 9-13, citing *Gattineri v. Wynn MA, LLC*, 63 F.4th 71 (1st Cir. 2023) (summary judgment); *Ruggers, Inc. v. U.S. Rugby Football Union, Ltd.*, 843 F. Supp. 2d 139 (D. Mass. 2012) (summary judgment); *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 781 N.E.2d 787 (2003) (jury trial); *Collins v. Huculak*, 57 Mass. App. Ct. 387, 783 N.E.2d 834 (2003) (bench trial); *Taunton Fed. Credit Union v. Weiner*, 2010 WL 1708814 (Mass. App. Ct. Apr. 29, 2010) (summary judgment); *Graham v. Just A Start Corp.*, 2011 WL 3524405 (Mass. Super. Aug. 4, 2011) (summary judgment).

Plaintiffs and 814's sole rule 12(b)(6) case, *Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236 (D. Mass. 1999), is readily distinguishable. There, the complaint itself defeated the fraud claim because it alleged that the dangers of smoking had been widely publicized since the 1950s, making reliance on contrary public statements unreasonable as a matter of law. *Id.* at 241-43. Unlike *Philip Morris*, nothing alleged in the Counterclaim establishes that Sellers knew, or had reason to know, that 814's representation regarding the Third Amendment was false.

11

Unlike in *Kuwaiti Danish* or *Graham*, the pertinent change to the P&S was not apparent from the face of the amendment itself. The amendment (Doc. 1-2) deleted and replaced half a dozen numbered sections of the P&S without reproducing the deleted language. Determining that the amendment eliminated the simultaneous-closing requirement would have required comparing multiple provisions of the amendment against multiple provisions of the underlying eighteen-page P&S.

Plaintiffs' reliance on *Rohm and Haas Elect. Materials, LLC v. Electronic Circuits Supplies, Inc.*, 759 F. Supp. 2d 110 (D. Mass. 2010), is similarly misplaced. There, the court rejected a fraudulent-inducement theory based on a failure to disclose the terms of a contract amendment where the plaintiff had not alleged any misleading affirmative statements concerning the amendment's contents. *Id.* at 120 (denying preliminary injunction). Here, by contrast, Sellers specifically allege that 814 affirmatively represented that the "sole purpose" of the Third Amendment was to extend the closing deadline.

Accordingly, none of Plaintiffs'/814's authorities supports dismissal of Sellers' fraud-based defenses or counterclaims at the pleading stage.[2]

### D. The Counterclaim plausibly alleges actionable half-truths.

Plaintiffs and 814 argue that 814 had no duty to disclose the contents of the Third Amendment because 814 owed Sellers no fiduciary or other special duty. Memo of Law, pp. 7-8. That argument mischaracterizes the Counterclaim.

---

[2] Although Plaintiffs cite Rule 9(b)'s heightened pleading standard (see Memo of Law, p. 5), they make no argument that the Counterclaim fails to satisfy Rule 9(b). Any such argument is therefore waived.

12

This is not a case involving mere silence. Sellers do not allege that 814 simply failed to volunteer information. Rather, Sellers allege that 814 affirmatively represented that the "sole purpose" of the Third Amendment was to extend the closing deadline while omitting the material fact that the amendment also eliminated the P&S's longstanding simultaneous-closing requirement. Counterclaim ¶¶ 27-30.

Those allegations fall squarely within the settled Massachusetts rule that "fragmentary information" and "half-truths" may constitute actionable fraud. *Kannavos v. Annino*, 356 Mass. 42, 48, 247 N.E.2d 708, 711-712 (1969) (collecting cases). Even in an arm's-length transaction, a party that elects to speak on a subject must speak honestly and disclose all material facts necessary to prevent its statements from becoming misleading. *Id.* at 48-49.

The First Circuit applied the same principle in *V.S.H. Realty*, 757 F.2d at 411. There, the district court dismissed a fraud claim based on the absence of a fiduciary duty requiring affirmative disclosure. *Id.* at 413. Reversing, the First Circuit explained that Massachusetts law recognizes liability for "partial or incomplete statements that may by their incompleteness be actionable." *Id.* at 414-15. The court observed that Massachusetts law strongly supports the proposition that "a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party." *Id.* at 415.

That is precisely what Sellers allege here. 814 chose to speak about the purpose and effect of the Third Amendment. Having done so, 814 could not lawfully represent that the amendment's "sole purpose" was extending the closing deadline while simultaneously omitting that the amendment also eliminated a contractual requirement the parties had repeatedly preserved and treated as essential.

13

### E. Reasonable reliance cannot be resolved on the pleadings.

The Counterclaim alleges that the parties' original agreement required simultaneous closings, that successive amendments repeatedly preserved that requirement, and that immediately before execution of the Third Amendment, 814 expressly represented that the amendment merely extended the closing deadline. Sellers further allege that they had no reason to suspect that 814 had secretly removed the simultaneous-closing requirement and that nothing in the Third Amendment plainly disclosed such a fundamental change.

Whether Sellers acted reasonably in relying on 814's representation depends on the parties' course of dealing, the circumstances surrounding execution of the Third Amendment, and the parties' competing accounts of what was represented. Those are factual issues that cannot be resolved on the pleadings. See Memo of Law, p. 9 ("the reasonableness of a party's reliance is ordinarily a question of fact..."); *Sheffer v. Rudnick*, 291 Mass. 205, 210-11, 196 N.E. 864, 868 (1935) ("The question whether the plaintiff exercised reasonable care in relying upon the representations is ordinarily one of fact."); *Collins v. Huculak*, 57 Mass. App. Ct. 387, 392, 783 N.E2d 834, 839 (2003) (collecting cases). At minimum, those factual disputes preclude dismissal at the pleading stage.

Unable to overcome the factual allegations themselves, Plaintiffs instead argue that Sellers' sophistication and representation by counsel render reliance unreasonable as a matter of law. Massachusetts law holds otherwise. Massachusetts law does not permit one sophisticated party to procure a contractual advantage through material misrepresentations made to another sophisticated party. *VMark Software, Inc. v. EMC*

14

*Corp.*, 37 Mass. App. Ct. 610, 619-20 n. 11, 642 N.E.2d 587, 594 n. 11 (1994), citing *McEvoy*, 408 Mass. at 712-13.

*Sheehy v. Lipton Indus., Inc.*, 24 Mass. App. Ct. 188, 507 N.E. 2d 781 (1987), is instructive. There, the Appeals Court reversed summary judgment even though the defendants argued that the plaintiff—an experienced businessman represented by counsel—could not reasonably have relied on alleged misrepresentations concerning the transaction. *Id.* at 194. The Appeals Court cautioned that that "[t]he motion judge should not have considered the credibility of the parties." *Id.*

Plaintiffs and 814 argue that Sellers' reliance was unreasonable because Ms. Stump signed the Third Amendment without reading it and because a cursory review supposedly would have revealed the falsity of 814's representation. Memo of Law at 9–13. The argument fails for two independent reasons: it misstates what the Third Amendment disclosed and misapplies Massachusetts law governing reasonable reliance.

A party's reliance on a fraudulent misrepresentation is not unreasonable merely because further investigation might have uncovered the truth. *Sanford Inst. for Sav. v. Gallo*, 156 F.3d 71, 74-75 (1st Cir. 1998) (applying Mass. law); *Yorke v. Taylor*, 332 Mass. 368, 374, 124 N.E.2d 912  (1955). The duty to refrain from fraud is "so strong that the deceived party is not charged with failing to discover the truth." *V.S.H.*, 757 F.2d at 414, citing *Snyder v. Sperry & Hutchinson Co.*, 368 Mass. 433, 446, 333 N.E.2d 421 (1975). Only reliance on misrepresentations "known by the victim to be false or obviously false" is not justified; falsity which could have been discovered by senses during a "cursory glance" may not be relied upon. *Sanford,* 156 F.3d at 74-75.

Nothing on the face of the Third Amendment stated that the simultaneous-closing requirement was being removed. To discover that change, Sellers would have

15

needed to cross-reference multiple deletion provisions in the amendment against multiple provisions scattered throughout the underlying eighteen-page P&S. That exercise bears no resemblance to the type of obvious falsity that defeats reliance as a matter of law.

## III.   THIS COURT SHOULD DENY THE MOTION TO DISMISS THE CHAPTER 93A COUNTERCLAIM (COUNT IV).

The chapter 93A claim is plausibly pled. Plaintiffs' and 814's motion to dismiss the Chapter 93A claim fails for substantially the same reasons as their attack on the fraudulent inducement claim.

According to the Counterclaim, 814 understood that simultaneous closings were essential to Sellers, repeatedly acknowledged that fact, and then falsely described an amendment eliminating that requirement as a mere extension of the closing deadline. Such fraudulent misrepresentations, if proven, exceeds the bounds of ordinary commercial negotiation and squarely constitutes unfair and deceptive business behavior that violates Chapter 93A.

Where, as here, a party knowingly misrepresents material facts in order to induce another party to enter a transaction or surrender valuable contractual rights, such conduct falls squarely within the type of unethical and deceptive commercial behavior that Chapter 93A was enacted to prevent. See *McEvoy*, 408 Mass. at 714 ("Common law fraud can be the basis for a claim of unfair or deceptive practices under the statute…"). Moreover, deliberately obtaining a contractual concession through deception concerning the contents of a contract amendment exceeds ordinary commercial sharp dealing and falls within the range of conduct Chapter 93A was designed to deter. *Diamond Crystal Brands, Inc. v. Backleaf, LLC*, 60 Mass. App. Ct. 502, 507, 803

16

N.E.2d 744 (2004), citing *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 474, 583 N.E.2d 806 (1991) (a knowing violation of contractual obligations for the purpose of securing unwarranted benefits violates 93A.)

The Counterclaim plausibly alleges that 814 engaged in unfair and deceptive conduct in the course of a business transaction. That is more than sufficient to state a claim under G.L. c. 93A. Accordingly, Plaintiffs' and 814's motion to dismiss Count IV of the Counterclaim should be denied.

## IV.    THIS COURT SHOULD DENY THE MOTION TO DISMISS THE BREACH OF CONTRACT COUNTERCLAIM (COUNT II).

Because Sellers plausibly allege fraudulent inducement (for the reasons discussed above), Plaintiffs' premise that the Third Amendment governs, see Memo of Law, pp. 14-16, necessarily fails at this stage. If the Third Amendment is unenforceable because it was procured through fraud, then the parties' rights are governed by the original P&S and the first and second amendments, which required simultaneous closings. Counterclaim ¶¶ 10-23.

The Counterclaim further alleges that the ECY transaction closed on or about January 2, 2026, but that 814 failed to close on the purchase of the real estate at that time as the P&S required. Counterclaim ¶¶ 37-43. Sellers allege that 814's failure to consummate the real estate transaction simultaneously with the ECY closing constituted a breach of the parties' contractual obligations and caused Sellers damages. *Id.* ¶¶ 52-56. Those allegations are more than sufficient to state a plausible breach of contract claim.

17

## V.    JUDGMENT ON THE PLEADINGS ON PLAINTIFFS' SPECIFIC PERFORMANCE CLAIM (Count I) IS IMPROPER.

Plaintiffs' Rule 12(c) motion on their specific-performance claim fails because the enforceability of the Third Amendment remains genuinely disputed. Sellers allege that the Third Amendment is void because 814 procured it through fraudulent inducement. If the Third Amendment is unenforceable, Plaintiffs' claimed February 27, 2026 closing right disappears, and Sellers plausibly allege that 814 itself breached the governing agreements by failing to close simultaneously with the ECY transaction in January 2026.

Accordingly, the pleadings do not establish Plaintiffs' entitlement to judgment as a matter of law. The pleadings instead reveal substantial disputes concerning fraud, reasonable reliance, contractual enforceability, and breach—disputes that preclude judgment on the pleadings and certainly preclude the extraordinary equitable remedy of specific performance.

Plaintiffs' request for specific performance independently fails because Sellers plausibly allege 814's unclean hands, including fraudulent inducement. "The doctrine of unclean hands denies equitable relief to one tainted with the inequitableness or bad faith relative to the matter in which [it] seeks relief." *Murphy v. Wachovia Bank of Del., N.A.*, 88 Mass. App. Ct. 9, 15, 36 N.E.3d 48 (2015) (cleaned up). A party seeking equitable relief must come to court with clean hands. *Santagate v. Tower*, 64 Mass. App. Ct. 324, 334-35, 833 N.E.2d 171 (2005); *Carter v. Sullivan*, 281 Mass. 217, 226 (1932).

Accepting the Counterclaim's allegations as true—as the Court must on a Rule 12 motion—Plaintiffs seek specific performance of an amendment that 814 procured

18

through fraud. Those allegations alone preclude judgment on the pleadings awarding equitable relief.

## Conclusion

For all of the foregoing reasons, Defendants ask the Court to:

1. deny Plaintiffs' Motion for Judgment on the Pleadings in its entirety,

2. deny Plaintiffs' and 814's Motion to Dismiss the Counterclaim, and

3. grant such further relief as the Court deems just and proper.

<div style="margin-left:40%">

Respectfully submitted,
PROPRIETORS DRIVE, LLC, 327
QUAKER MEETINGHOUSE ROAD,
LLC, and 434 ROUTE 134, LLC,
By their attorneys,

</div>

Dated: May 29, 2026

<div style="margin-left:40%">

/s/ *Michael P. Twohig*
Michael P. Twohig, BBO # 648079
Twohig Caplan LLP
25 Pender Street
Boston, MA 02132-3209
617-548-3627
mtwohig@twohigcaplan.com

and

/s/ *Andrew F. Caplan*
Andrew F. Caplan, BBO # 564127
Twohig Caplan LLP
P.O. Box 84
Swampscott, MA 01907
339-440-0978
acaplan@twohigcaplan.com

</div>

19