UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EIG14T SP MA E SANDWICH LLC,
EIG14T SP MA MARSHFIELD LLC, and
EIG14T SP MA S DENNIS LLC;

          Plaintiffs,

    v.

PROPRIETORS DRIVE, LLC, 327
QUAKER MEETINGHOUSE ROAD,
LLC, and 434 ROUTE 134, LLC;

          Defendants,

    and

STARBOARD ACADEMY MARSHFIELD
STELLAR, LLC; LITTLE STARS
LEARNING CENTER SANDWICH
STELLAR, LLC; and LITTLE STARS
LEARNING CENTER SOUTH DENNIS
STELLAR, LLC,

          Lis Pendens Defendants,

    and

814 ACQUISITIONS LLC,

          Counterclaim Defendant.

Civil Action No. 1:26-cv-11187-MPK

(leave to file granted on June 12, 2026, Doc. 32)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' AND
COUNTERCLAIM DEFENDANTS' MOTIONS FOR JUDGMENT ON THE
<u>PLEADINGS AND TO DISMISS COUNTERCLAIMS</u>**

Plaintiffs EIG14T SP MA E Sandwich LLC, EIG14T SP MA Marshfield LLC, and EIG14T

SP MA S Dennis LLC (collectively, "Purchaser") and Counterclaim Defendant 814 Acquisitions

1

LLC ("Original Purchaser") respectfully submit this Reply in further support of their Motion for Judgment on the Pleadings and Motion to Dismiss Defendants' Counterclaims.

Since refusing to comply with their contractual obligations on February 27, 2026, Defendants Proprietors Drive, LLC, 327 Quaker Meetinghouse Road, LLC, and 434 Route 134, LLC (collectively, "Seller") has advanced a series of shifting and mutually inconsistent theories to excuse its breach. When each version proved untenable, Seller abandoned and materially altered that theory and moved on to the next. Seller's Opposition presents the latest iteration.

First, in a February 25, 2026 email, Seller's counsel claimed that it "rejects the veracity and contents of the amendments to the Purchase and Sale Agreement as same were obtained without advise [sic] of counsel in violation of the terms of the underlying contract." Doc. 1-3 at 5. In this version, Seller challenged *all three* amendments. Doc. 1-3 at 5. Second, just one day later, counsel pivoted, now asserting *all three amendments* "were not negotiated and noticed as per the terms of the underlying agreement." *Id.* at 3. When Purchaser's counsel asked Seller's counsel to identify the specific provision of the Agreement imposing such requirements, Seller's counsel could not do so — because none exists. *Id.* at 2. Third, in its Answer and Counterclaims, Seller narrowed its theory, alleging that *only the Third Amendment* was invalid because Original Purchaser "fraudulently induced defendants to sign it" by *making false representations* about the amendment's "*purpose*." Doc. 18 (Answer) at p. 2 ¶¶ 1, 28; Doc. 18 (Counterclaim) at ¶ 49. Now, in its Opposition, Seller shifts yet again, recasting its theory around alleged "*implicit representations*" that the Third Amendment "merely extended the closing deadline" and therefore misrepresented its "*nature and effect*." Doc. 28 at 5, 7-8. Thus, Seller now advances a formulation materially different from the "sole purpose" allegation actually pled. *See* Doc. 18 (Counterclaim) ¶ 29.

2

Seller's pattern of escalating, contradictory, and post-hoc rationalizations is the hallmark of a party searching for justification to avoid a bargain it now regrets. The Court should view Seller's arguments through this lens and reject each one.

**ARGUMENT**

The entire architecture of Seller's defenses and Counterclaims depends on the viability of its fraud-in-the-inducement theory. But Seller's fraud theory fails as a matter of law, and its Counterclaims and affirmative defenses collapse on top of it.

## I.    Seller's Own Admissions Establish Unreasonable Reliance

Seller devotes substantial space in its Opposition to the general proposition that fraud and reasonable reliance "ordinarily present factual issues . . . unsuitable for resolution on a motion to dismiss." Doc. 28 at 3, 10, 15. That general rule does not apply where, as here, the dispositive facts are not disputed. Seller has admitted those facts in its Answer and own Counterclaims; all that remains are questions of law for the Court. *See Wing Memorial Hospital v. Dep't of Public Health*, 10 Mass. App. Ct. 593, 596 (1980); *see also Gattineri v. Wynn, MA LLC,* 63 F.4th 71, 88 (1st Cir. 2023) (noting that reasonableness of reliance can be a question of law where "the undisputed facts permit only one conclusion") (quoting *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458,474 (2009)); *Kuwaiti Danish Computer Co. v. Digital Equip. Corp*., 438 Mass. 459, 467–468 (2003).

Seller admits that Original Purchaser sent Seller a copy of the Third Amendment at 3:33 p.m. on December 4, 2025. Doc. 18 (Counterclaims) ¶ 33. Seller admits that it received a copy of the proposed Third Amendment via email. *Id.* Seller admits that it "electronically executed the Third Amendment on the afternoon [one hour later, at 4:33 p.m.] of December 4, 2025, without reviewing it and without circulating it to [its] real estate counsel or to any other member of [its]

team." Counterclaims ¶ 34; Doc. 18 (Answer) ¶¶ 28, 31; Doc 1-2 at 3. Seller admits that the Purchase and Sale Agreement ("PSA") was "heavily negotiated between the parties through their respective legal counsel." Counterclaims ¶ 7. And Seller admits that its only excuse for not reading the amendment was that Seller's Manager "was extremely busy with preparations for sale of the business and properties" as well as other unspecified "commitments." *Id.* ¶ 34. No amount of discovery will change these facts.

Seller also acknowledges that reliance on misrepresentations, "the falsity of which could have been discovered by senses during a cursory glance" is not reasonable. Doc. 28 at 16 (quoting *Sanford Ins. for Sav. v. Gallo*, 156 F.3d 71, 74-75 (1st Cir. 1998). And Seller concedes that Original Purchaser did not prevent her from taking a "cursory glance" at the document, nor did anybody else. Doc. 26 at 11; *see generally* Doc. 28 (not disputing that Original Purchaser did nothing to prevent cursory glance). That concession is dispositive. The Third Amendment — *which contains less than 2 ½ pages of substance* —  expressly deleted and replaced six identified sections of the PSA: Recital B, Section 1(a), Section 4(a), Section 4(b), Section 7(l), and Section 11(b). Doc. 1-2 at 1-2. A document that facially deletes and replaces six numbered contract sections does more than extending a deadline: even limited cursory review, by Seller's own standard, would have revealed as much. Seller's admitted failure to do so defeats its reasonable reliance claim.

Seller protests that "determining that the amendment eliminated the simultaneous-closing requirement would have required comparing multiple provisions of the amendment against multiple provisions of the underlying eighteen-page [PSA]." Doc. 28 at 13. This argument defeats itself. The reliance inquiry is not whether Seller would have needed a forensic cross-reference to identify every downstream legal implication. The inquiry is whether a cursory glance would have revealed that the alleged false statement (here, allegedly that the amendment would do nothing

more than change a closing date) could not be reasonably relied on. An amendment that facially deletes and replaces six contract sections answers that question conclusively.[1]

Seller makes too much of the fact that several cases Purchaser cited were decided at summary judgment or trial rather than on a motion to dismiss. Doc. 28 at 12 & n.1. Here, too, Seller's own arguments cut against Seller. If the parties in the cited cases could not establish reasonable reliance after full discovery, Seller certainly cannot do so here, *where its own pleading admits it received the document, was not precluded from reviewing it, chose not to read it, chose not to consult available counsel, and chose to sign it after an hour*. No amount of discovery will rehabilitate those admissions. Thus, "the undisputed facts permit only one conclusion": Seller's reasonable reliance arguments fail as a matter of law. *See Gattineri*, 63 F.4th at 88.[2]

## II. The Alleged Oral Representation Does Not Transform Seller's Failure to Read into Actionable Fraud

Seller's central theory is that at a December 4, 2025 "Teams" meeting, Original Purchaser represented that the "sole purpose" of the Third Amendment was to extend the closing deadline, and therefore "necessarily implied that the amendment did not also eliminate [the simultaneous-closing provision]." Doc. 28 at 8. Accepting this allegation as true for these purposes, Seller's theory fails for multiple independent reasons.

---

[1] Seller's contention that the "pertinent change to the P&S was not apparent from the face of the amendment," Doc. 28 at 13 while invoking an incorrect standard, is similarly lacking. Comparing six paragraphs in a 3-page document with the original contract is hardly a Herculean task, particular for a sophisticated and counseled party engaging in two multi-million dollar business transactions.

[2] Seller's asserts in a footnote that Purchaser has "waived" any argument under Rule 9(b). Doc. 28 at 13 n.2. Seller is wrong. Purchaser's opening memorandum identified the Rule 9(b) heightened pleading standard as part of the applicable legal framework, and then systematically walked through Seller's failure to meet that standard. *See* Doc. 26 at 5, 6-13; *see Fernandes v. Costa Bros. Masonry, Inc.*, 199 F.3d 572, 588 (1st Cir. 1999), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) ("Waivers are not lightly to be inferred"). Seller's failure to substantively address whether its Counterclaim satisfies that standard, beyond a single conclusory footnote, underscores its vulnerability on this point. In any event, the Counterclaim fails for the reasons addressed in Purchaser's motion under any standard.

A. <u>Seller's own allegations and the transaction timeline demonstrate that Seller knew the Third Amendment required decoupling</u>

Seller's Counterclaim allegations fatally undermines its own fraud theory. Seller alleges that at the December 4, 2025 Teams meeting, the parties addressed that:

- The Massachusetts Department of Early Childhood Education ("EEC") had not yet approved the license transfer application, and that it appeared that the closing on the sale of the business to ECY would happen **in early January 2026**. Counterclaim ¶ 26.

- Original Purchaser sought to extend the real estate closing deadline to **the end of February 2026**. *Id.* ¶ 28.

- But that the December 15, 2025 closing deadline under the Second Amendment required the real estate closing to occur "on the same date" as the ECY closing. *Id.* ¶22.

Clearly, an extension of the real estate closing deadline to the end of February 2026, nearly two months after the anticipated January 2026 ECY closing, *could not logically coexist* with a simultaneous-closing requirement. Seller therefore knew, or at minimum reasonably should have known, that the only way to extend the real estate closing to the end of February via amendment, while the business asset closing proceeded separately in January, was to decouple the two closings. Seller cannot claim fraudulent inducement based on a contractual change it knew was logically necessary to accomplish the very deadline extension it admittedly understood and agreed to.[3]

B. <u>Seller's material and telling shift in its fraud theory does not save it</u>

Seller's Counterclaims allege that Original Purchaser stated the "sole purpose" of the Third Amendment was to extend the closing deadline, which was a false representation. Counterclaim ¶¶ 27–29, 58-59 ("made a false statement of material fact"; "relied on 814 Acquisition LLC's false statement"). Seller's Opposition repackages this as an "implied" representation that the

---

[3] This point is further made by Seller's own conduct. Seller admits that the closing of the ECY deal occurred in early January 2026, Counterclaim ¶ 53, claims it learned of the decoupling in January, yet never informed Original Purchaser or Purchaser of its intent not to close the property transaction until Purchaser reached out to Seller to coordinate the real estate in late February. Counterclaim ¶¶ 37-44; Complaint ¶¶ 34-36.

amendment "merely extended the closing deadline." Doc. 28 at 8, 15. These are not the same theory. An express statement about an amendment's "sole purpose" is a materially different allegation from an implied representation derived by negative inference. A party cannot amend its pleading through an opposition brief. *Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 7 n.2 (1st Cir. 2005). The Counterclaim does not allege an implicit-representation theory; it alleges an express affirmative misrepresentation. Seller's shift in an already long line of evolving theories underscores the weakness of the fraud claim it actually pled.

Seller cites *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 712 (1990), to support its argument that an alleged misrepresentation need not have been made at the time of signing, but only have been "still operative" at execution. Doc. 28 at 8-9. Seller fails to recognize (or fails to note for the Court) that *McEvoy* concerned a fraudulent statement by a defendant who "pointed to a particular provision of the final contract and fraudulently promised that it would not invoke the provision." *McEvoy*, 408 Mass. at 711. The SJC was careful in *McEvoy* to distinguish that circumstance from cases such as *Turner v. Johnson & Johnson*, 809 F.2d 90, 97 (1st Cir. 1986), in which the First Circuit held that "where both parties were experienced in business and the contract was fully negotiated and voluntarily signed, plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue." The SJC also cited approvingly cases such as *Plumer v. Luce*, 310 Mass. 789 (1942), in which the SJC held that sophisticated parties cannot plausibly allege fraud based on pre-agreement oral representation. *McEvoy*, 408 Mass. at 711. In so doing, the *McEvoy* Court noted that finding fraud in those circumstances constituted a "threat to contractual certainty."

As it did in those cases, an oral representation ceases to be "operative" when the party receives the actual written document containing the true and complete terms and has a full,

unimpeded opportunity to review it before signing. The transmission of the Third Amendment to Seller — with no deadline pressure, no restriction on review, and no prevention of consultation with counsel — superseded any prior oral characterization. Seller's theory would mean that any oral summary of a contract, no matter how long before signing, remains permanently "operative" regardless of the recipient's subsequent receipt of the document and opportunity to review. That is not the law.

C.  Seller improperly conflates the Third Amendment's "purpose" with the "mechanism" to accomplish that purpose

Seller's latest theory also fails because the allegedly stated purpose of the Third Amendment — extending the closing deadline — *is entirely consistent with the amendment's actual terms*. The Third Amendment *did* extend the closing deadline to February 27, 2026. Doc. 1-2 at 1. Seller does not allege otherwise. To do so, the Third Amendment necessarily decoupled the closing of the real estate transaction from the ECY business transaction because, as the Seller knew, the ECY business deal was set to close more than a month before the extension date. The decoupling was the *mechanism* by which the purpose (the extension) was effectuated — not some separate, hidden purpose.

This distinction is critical. Under the prior amendments, the real estate closing was required to "occur, if at all, on the same date as the closing of the transaction with ECY." Doc. 1-1 at 2; 18-1; 18-3 at 1. Extending the closing date to February 27, 2026, when the ECY deal was closing in January, therefore required revising the provisions tying the two transactions together. The Third Amendment's 2 ½ pages did exactly that: it deleted and replaced Section 1(a) (establishing a standalone closing deadline), Sections 4(a) and 4(b) (removing the ECY-closing contingency from both parties' obligations), and Section 11(b) (removing the condition that ECY must have consummated its purchase before Purchaser could seek specific performance). Doc. 1-2 at 1-2.

Each change was a necessary *mechanism* for accomplishing the agreed-upon *purpose*. Stating that an amendment's purpose is to extend a deadline is not a misrepresentation merely because the amendment requires modification of other contractual provisions to effectuate it. This Court should reject Seller's attempt to confuse two distinct concepts.

    D.  Seller's reliance on *Kenda Corp.* and the "present intent" doctrine is misplaced.

Like its citation to *McEvoy*, Seller's invocation of *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216 (1st Cir. 2003) is inapt. Seller cites *Kenda* for the proposition that misrepresentation of present intent as to future conduct is independently actionable. Doc. 28 at 8. The relevant deception in *Kenda Corp.* involved a defendant who concealed his intention not to perform a future action that he affirmatively said he would perform in order to induce the plaintiff to sign a contract. 329 F.3d at 227. Here, on the other hand, Seller admits that Original Purchaser's intent to extend the deadline to February 27 was fully disclosed. Counterclaim ¶¶ 27-28. Moreover, the actual terms of the Third Amendment were transmitted in writing to Seller before execution, and those terms accurately reflected exactly what Original Purchaser intended the amendment to accomplish, using only the necessary means by which that would be accomplished. Simply, there was no concealed future intent here, there was a written document that Seller chose not to read.

Seller's claims that it was fraudulently induced to sign the Third Amendment fails as a matter of law. Seller's buyer's remorse does not justify its breach.

## III.    The Half-Truth Doctrine Does Not Apply Where the Full Truth Was Contained in the Document Signed

Seller further relies on the half-truth doctrine under *Kannavos v. Annino*, 356 Mass. 42 (1969), and *V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411 (1st Cir. 1985), arguing that Original Purchaser's characterization of the Third Amendment's purpose was a "half-truth" triggering a duty of complete disclosure. Doc. 28 at 13-14. This reliance is misplaced.

In *Kannavos*, the seller of several multi-family buildings advertised to potential buyers that the buildings were investment properties, and that they were single houses converted to apartments, without disclosing that such use violated local zoning ordinances. 356 Mass. at 48-49. This zoning violation was also not disclosed in any of the sales documents themselves. *See id.* In analyzing that case in *Sullivan v. Five Acres Realty Trust*, 487 Mass. 64 (2021), the SJC noted the clear distinction between the conduct in *Kannavos*, where the defendant affirmatively "suggest[ed] that the property was suitable for a particular purpose when that purpose was prohibited," from those cases involving a "failure to reveal" or "bare nondisclosure" — conduct insufficient to establish fraud. *Id.* at 75 (citing *Kannavos*, *supra* at 47, 49, and *Swinton v. Whitinsville Sav. Bank*, 311 Mass. 677, 677-79 (1942)). Similarly, in *V.S.H. Realty*, the First Circuit reversed the district court's dismissal of a fraud claim where the defendant made multiple "partial and ambiguous statements," "failed to fully respond" to "repeated inquiries," and "actionably misrepresent[ed]" a relevant fact about the property being purchased. 752 F.2d 411, 414-15 (1st Cir. 1985).

Here, there was no misrepresentation of an affirmative fact, or even strong suggestion of any such fact, which constitutes a "half-truth." Purchaser did not affirmatively state that extending the closing deadline would not require decoupling, or affirmatively state anything suggesting that extending the closing date beyond the January 2026 ECY closing date would not require decoupling. Even based on Seller's fraught legal theory, Original Purchaser statement was, at most, a "failure to reveal" or "bare nondisclosure" of the specific contractual amendments required to achieve the agreed-upon extension. *See Sullivan*, 487 Mass. at 75 (no fraud for failure to reveal); *Nei v. Burley*, 388 Mass. 307, 310-11 (1983) (no fraud for failing to disclose every detail known to them). Moreover, unlike in *Kannavos*, the allegedly concealed information, that the Third Amendment eliminated the simultaneous-closing requirement, was openly contained in the four

10

corners of the very document Seller signed. The Third Amendment identified by section number each provision it deleted and replaced. A party who receives a written amendment that facially deletes and replaces contract sections is plainly on notice that those sections are being changed. Reading the amendment would have revealed every change; the Seller's refusal to do so does not convert the transmission into a fraudulent inducement. Original Purchaser transmitted the complete Third Amendment to Seller before execution. Every term was available for review. Transmitting the complete document *was* the full disclosure.

Extending *Kannavos* to cover information plainly stated in a signed written instrument, as Seller requests, would nullify the duty to read in every commercial transaction. Under Seller's theory, any party who orally summarizes a contract amendment, even where the counterparty receives the full written document, could be liable for fraud if the summary did not fully outline every change. That rule would create perverse incentives for sophisticated commercial parties to avoid reading documents precisely so they could later invoke the half-truth doctrine. No Massachusetts court has adopted such a rule. Nor should this Court.[4]

## IV.   Seller's Lack-of-Knowledge Denial Regarding the Assignment Does Not Preclude Judgment on the Pleadings and Is Made in Bad Faith

Seller argues there are unresolved factual issues preventing judgment because it responded in its Answer that it "lack[s] sufficient knowledge or information to respond" to the allegation in the Complaint that "On February 24, 2026, Original Purchaser assigned its rights, title, interest and obligations under the Agreement to Purchaser." According to Seller, that response operates as a denial, which this defeats the Rule 12(c) motion because "the pleadings do not conclusively

---

[4] Moreover, the half-truth theory was not the theory Seller actually pled. The Counterclaim alleges an affirmative, express misrepresentation about the Third Amendment's "sole purpose" — not a half-truth or omissions. *See* Counterclaim (Count III) ¶¶ 57-59. Seller cannot rewrite its pleading through an opposition brief to import a legal theory the Counterclaim does not support. *See Redondo-Borges* 421 F.3d at 7 n.2.

establish that Plaintiffs possess the contractual rights they seek to enforce" Doc. 28 at 6; Complaint ¶ 33; Answer ¶ 33. Seller is wrong for multiple reasons. First, the First Circuit has stated (albeit in the context of determining a lawyer's obstinance) that "[a]s a matter of law, denying a fact is different than asserting an inability to answer for lack of sufficient information," and that a "lack of information" answer does not constitute a denial of total liability" *See Correa v. Cruisers*, 298 F.3d 13, 31, 32 (1st Cir. 2002). Further, as explained below, Seller's answer that it "lack[s] sufficient knowledge or information to respond" does not comply with Fed. R. Civ. P. 8 or 11, contradicts the documentary record,  and was not made in good faith. Instead, the record properly before this Court proves the veracity of the Assignment, and that each element of breach is met.

Federal Rule of Civil Procedure 8(b)(5) allows a party that "lacks knowledge *or information sufficient to form a belief about the truth of an allegation*" to so state, and gives the response the effect of a denial. This "belief" requirement is not a mere technicality but is a necessary condition for a party seeking the benefit of a denial based on a lack of information. *See Gilbert v. Johnston*, 127 F.R.D. 145, 146 (N.D. Ill. 1989) ("Rule 8(b) teaches (1) the critical factor for a party seeking the benefit of a deemed denial is his or her *belief*, rather than out-and-out knowledge, as to whether or not an allegation is true and (2) *information* may be enough to support such a belief that the allegation is true.") (emphasis in original). "Merely saying that someone lacks knowledge . . . is a position that may well flout Rule 8(b)." *Id.*[5] Moreover, Rule 11(b) requires that an attorney must conduct a "reasonable inquiry" before certifying a response to the court. "[A] party 'may not deny sufficient information or knowledge with impunity, but is subject to the

---

[5] For these reasons, and as further explained in the subsequent paragraphs showing that Seller did have information to form a belief (and knowledge) that the Assignments were true, the Court should strike paragraph 33 of Seller's Answer pursuant to Fed. R. Civ. P. 12(f). *See, e.g. Controlled Env't Systems v. Sun Process Co., Inc.*, 173 F.R.D. 509, 510-11 (N.D. Ill. 1997)(striking answer that failed to address "belief" element of Rule 8).

requirements of honesty in pleading. An averment will be deemed admitted when the matter is obviously one as to which the defendant has knowledge or information.'" *Djourabchi v. Self*, 571 F. Supp. 2d 41, 50 (D.D.C. 2008) (quoting *David v. Crompton & Knowles Corp.*, 58 F.R.D. 444, 446 (E.D. Pa. 1973)).

Here, Seller responded to the allegation that Original Purchaser assigned its rights to Purchaser by contending that it "lacks sufficient knowledge or information to respond." *See* Answer ¶ 33. Seller failed to address whether it has "information sufficient to form a belief about the truth" of the allegation. But the record reveals that Seller had sufficient information to form a belief about the truth of the allegation *as well as* knowledge of the Assignments themselves. In fact, Seller and Seller's counsel both have had in their possession a copy of all three fully-executed Assignments since February of this year. Seller's answer to paragraph 33 of the Complaint does not comply with Fed. R. Civ. P. 8 and 11, was made in bad faith, and should be deemed admitted.

On February 24, 2026, Purchaser's General Counsel emailed Seller's principal and real estate counsel, attaching (in three separate emails) each Assignment of the Agreement of Purchase and Sale and identifying the assignee entities. *See* Complaint ¶ 35; Doc. 1-3 at 5 (email from Michael Laramie to Tonya Stump and Attorney Jane Coderre on Feb. 24, 2026 at 3:07 p.m.); Answer ¶ 35. A true and correct copy of the three emails sent to Seller and Seller's real estate counsel on February 24, 2026 at 3:04, 3:06, and 3:07 p.m. are attached as <u>Exhibit 1</u>.[6] Seller's

---

[6] The fact that these emails and the attached Assignments were sent to Seller was specifically referenced in the Complaint, and one of the three emails was attached to the Complaint as an exhibit. *See* Complaint ¶ 35; Doc. 1-3 at 5. Accordingly, this Court may consider these communications on a motion under Rules 12(b)(6) and 12(c) without converting the motion to one for summary judgment. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) (court may consider "documents the authenticity of which are not disputed by the parties," "documents central to plaintiffs' claim," and "documents sufficiently referred to in the complaint"); *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012) (internal quotation marks omitted) (noting that on a motion to dismiss, the court may consider "documents incorporated by reference into the complaint, matters of public record, and

counsel responded the next day without raising any objection or questioning the Assignments. Doc. 1-3 at 4-5. Seller's counsel then responded again on February 26, 2026, again without raising any concern about the Assignments. *Id.* at 2-4.[7] A party that possesses the very document it purports to lack knowledge of cannot invoke Rule 8(b)(5) in good faith. This is a tactical (and improper) pleading maneuver, not a genuine factual dispute.

Section 13(e) of the PSA expressly permits Original Purchaser to "assign all or part of its right, title and interest in and to this Agreement . . . to any entity(ies) in which the members or managers of Purchaser directly or indirectly control prior to Closing." This is precisely what occurred. Original Purchaser, whose Manager is Reed Fenton, assigned its rights, title, interest and obligations in the PSA to Purchaser, whose Manager is also Reed Fenton. *See* Assignments, attached at <u>Exhibit 2</u>.[8] The Assignments were made and sent to Seller before the February 27, 2026 closing date. Complaint ¶ 35; Doc. 1-3 at 5; Exhibit 1; Exhibit 2. Seller identifies no deficiency in the Assignments and does not allege that Purchaser fall outside the permitted class. The documentary evidence properly incorporated into the pleadings therefore establishes that Original Purchaser validly assigned its rights to the PSA to Purchaser.[9]

---

facts susceptible to judicial notice."). "This is true even when the documents are incorporated into the movant's pleadings." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007).

[7] Seller has never challenged Purchaser's standing to bring this suit. This further illustrates that Seller has had knowledge of the fact that Original Purchaser assigned its rights to the Purchaser since February 24, 2026.

[8] The Assignments are both referenced in and integral to the Complaint, see Compl. ¶ 33; Doc. 1-3 at 5. The Court may therefore consider them here without converting the motion to one for summary judgment. *See Watterson*, 987 F.2d at 3; *Beddall*, 137 F.3d at 17; *Grajales*, 682 F.3d at 44; *Curran*, 509 F.3d at 44 (1st Cir. 2007).

[9] The assignment issue has no bearing on the Counterclaim analysis. Original Purchaser remains a party to this action as a Counterclaim Defendant. The motion to dismiss the Counterclaims should be granted regardless of how this narrow issue is resolved.

And, because Seller has admitted all other material facts necessary to establish Plaintiff's right to enforce the PSA, and concedes those factual admissions, the Court should enter judgment on the pleadings in favor of Purchaser as to liability on Count I of the Complaint.

**V.    Seller's Affirmative Defenses, Remaining Counterclaims, and Equitable Defenses Are All Derivative of the Fraud Theory and Fail with It**

First, some housekeeping: Seller's Opposition does not defend its declaratory judgment counterclaim (Count I) against Purchaser's argument that it is duplicative and serves no independent purpose. *See* Doc. 26 at 15-16. Seller has therefore conceded the point and Count I of the Counterclaims should be dismissed on that independent basis.

Every remaining affirmative defense and Counterclaim Seller has raised is entirely derivative of its fraud-in-the-inducement theory. Seller asserts that its affirmative defenses "directly challenge the enforceability of the Third Amendment" and therefore independently preclude judgment on the pleadings. Doc. 28 at 6. But the mere existence of affirmative defenses does not shield a party from Rule 12(c) where those defenses are legally insufficient on their face. *See, e.g., HSBC Realty Credit Corp v. O'Neill*, No. 12-11733-RGS, 2013 WL 362823, at *2-*5 (D. Mass. Jan. 30, 2013) (granting judgment on the pleadings despite assertion of legally insufficient affirmative defenses). Seller's affirmative defenses each presuppose that the Third Amendment was procured through fraud. Doc. 18 at 9; Doc. 28 at 6, 19. Because its fraud theory fails as a matter of law for the reasons argued above, each of these defenses and claims collapse.

Seller effectively concedes that its Chapter 93A claim "fails for substantially the same reasons" as the fraud claim. Doc. 28 at 17 (noting that Seller's Chapter 93A claims relies on the same fraudulent inducement theory). Because the fraud theory fails as a matter of law, the Chapter 93A claim fails with it. Even independently, transmitting a contract amendment to a sophisticated counterparty for review and signature through a standard electronic signature platform is not the

15

type of conduct that "attains a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Levings v. Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979).

Seller states explicitly that its breach of contract counterclaim depends on the premise that "the Third Amendment is unenforceable because it was procured through fraud." Doc. 28 at 18. Because the Third Amendment is enforceable, the simultaneous-closing requirement that the Third Amendment deleted cannot form the basis of a breach of contract claim. *See* Doc. 1-2.

Finally, Seller's unclean-hands defense also rests entirely on the same fraud allegations. Doc. 28 at 19. Unclean hands is an equitable doctrine that requires established misconduct, not a meritless fraud theory that has been reinvented four times in three months. *See Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 488 F.3d 11, 15-16 (1st Cir. 2007). Seller's evolving theories, from challenging all three amendments, to challenging only the Third, to alleging express misrepresentation, to alleging implicit misrepresentation, reflects a shifting litigation strategy, not genuine equitable grievance. Where the underlying fraud allegations fail as a matter of law, the unclean-hands defense built upon them necessarily fails as well. The Third Amendment's revised Section 11(b) expressly provides Purchaser the right to pursue specific performance upon Seller's default. Doc. 1-2 at 2. That contractual right is enforceable.

## **CONCLUSION**

Seller's Opposition is the latest chapter in a pattern of shifting, post-hoc justifications for its refusal to perform. Having abandoned its initial claim that all three amendments were invalid, and having silently dropped the theory that the amendments required counsel review or formal notice, Seller now asks this Court to accept a fraud theory that is contradicted by its own allegations, undermined by the documentary record, and unsupported by the case law it cites.

The Counterclaims' own timeline demonstrates that Seller understood the Third Amendment would decouple the closing dates because that was the necessary and obvious consequence of the deadline extension Seller admittedly agreed to. Seller received the written amendment, held it for an hour, chose not to read it, chose not to consult its counsel, and chose to sign it. Seller then said nothing after closing the ECY business deal, waited a month and a harlf, and then refused to close with Purchaser. And since that time, Seller has offered four different justifications for that refusal, each one abandoned when it proved untenable. That is not fraud. That is regret.

For the foregoing reasons, and those stated in Purchaser's opening memorandum, this Court should: (1) grant Purchaser's Motion for Judgment on the Pleadings as to liability on Count I of the Complaint; (2) dismiss all counts of Seller's Counterclaim with prejudice; and (3) enter an order of specific performance compelling Seller to complete the conveyance of the properties.

Respectfully submitted,

EIG14T SP MA E SANDWICH LLC, EIG14T SP MA MARSHFIELD LLC, EIG14T SP MA S DENNIS LLC, and 814 ACQUISITIONS LLC

By their attorney,

*/s/ Anuj K. Khetarpal*
Anuj K. Khetarpal (BBO #679163)
Christopher F. Robertson (BBO #642094)
akhetarpal@seyfarth.com
crobertson@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210
617-946-4951

Dated: June 18, 2026

17

## <u>CERTIFICATE OF SERVICE</u>

I, Anuj K. Khetarpal, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as non-registered participants.


*/s/ Anuj K. Khetarpal*
Anuj K. Khetarpal